IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| Ronald Pitts, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. Act. No. _____ |
| ) | |
| First Class Staffing Solutions Inc., ) | COMPLAINT |
| ) | DAMAGES AND INJUNCTIVE RELIEF |
| Jacobson Packaging Company, LLC, ) | JURY TRIAL DEMAND |
| ) | |
| Jacobson Transportation Company, Inc., ) | |
| ) | |
| Jacobson Warehouse Company, ) | |
| ) | |
| Norbert Dentressangle, S.A., ) | |
| ) | |
| XPO Logistics, LLC, ) | |
| ) | |
| Individually and jointly, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMPLAINT

Summary

1.      Plaintiff, Ronald Pitts, is an African American male, who challenges a termination in October 2014, by alleging disability discrimination theories of "treated as" and "failure to engage in interactive communication process."

Exhaustion

2.      Plaintiff timely formalized an EEOC charge alleging at least disability discrimination in February 2015, against his former employer, which was assigned Charge No. 410-2015-01970.

3.      Plaintiff has been in the hospital since 01.24.16 and is currently in the hospital, and the undersigned is facilitating a filing without having seen the Charge document, although he requested it from the EEOC by email on Monday, but he has seen the Intake Questionnaire.

1

4.     Plaintiff received a Right to Sue Notice dated October 30, 2015 and this action is filed within 90 days.

## Parties

5.     In 2007 Plaintiff became employed by First Class Staffing Solutions Inc. as a forklift driver at a Jacobson Company warehouse in Irwinton, GA.

6.     Jacobson may be Jacobson Packaging Company, LLC, Jacobson Transportation Company, Inc., or Jacobson Warehouse Company, but the business was operated at 2191 Bellwood Road, Irwinton, Georgia, 31042, which is a company that transported materials in interstate commerce to customers in other states.

7.     First Class Staffing and Jacobson each have 15 or more employees and are therefore covered by the Americans with Disabilities Act.

8.     In the alternative as to the employment of Plaintiff, he was possibly an employee of a joint employer, because he operated the forklift in a warehouse owned and operated by the agents and managers of Jacobson Company, and it is possible that agents of Jacobson had joint proximate influence in the challenged adverse treatment of Plaintiff.

9.     The corporate home office of Jacobson is Clive, Iowa.

10.    Jacobson was sold to Norbert Dentressangle, S.A. in July 2014, and Norbert used the office of Jacobson in Iowa, as its U.S. headquarters.

11.    Counsel's review of the Georgia Secretary of State corporate website for Norbert Dentressangle on January 26, 2015, did not reveal a registered agent for purposes of service.

12.    According to a press release from Xpo Logistics, LLC., Xpo purchased Norbert Dentressangle June 8, 2015. http://uk.xpo.com/mobuk/News3/XPO-acquires-majority-interest-in-Norbert-Dentressangle

13. The home office of Xpo is in Greenwich, CT.

14. Xpo has the NYSE symbol of XPO.

15. Xpo's registered agent for purposes of service is: Registered Agent Solutions, Inc., 900 Old Roswell Lakes Pkwy, Roswell, GA, 30076.

Facts

16. Plaintiff was a forklift operator, who sat and drove a forklift using steering, brake, clutch and gas mechanisms with his hands and feet, and used levers to operate the forklift to move bags of clay in and out of the warehouse and on to trucks for shipping.

17. Although Plaintiff had high blood pressure before the challenged termination in October 2014, it was permanent but controlled, and he was able to perform the basic functions of a forklift operator at the time of the challenged termination in 2014.

18. He was able to perform the basic functions of a forklift operator at least until October 2015, with a reasonable accommodation, when he applied for disability.

19. His rate of pay was $9.73 per hour in October 2014, at the time of the challenged termination, and he may have been eligible for raises between then and October 2015.

20. As of October 2014, he had performed his forklift tasks without problems or restrictions related to high blood pressure.

21. The employer had not yet expressed concerns about Plaintiff's performance or his blood pressure.

22. On 10.13.14 Plaintiff was injured while walking from the parking lot to check in, and he hit his leg on a handle of a pump that was sticking out.

23. Plaintiff informed supervisors of the injury that was an injury that would be covered by workers comp, other qualifying conditions of seriousness of injury or loss being met.

3

24. On 10.14.14 supervisor Horst told Pitts to go the Oconee hospital at 7:30 pm.

25. Pitts went to the hospital, and at the request of the employer, he was given a drug test.

26. Medical personnel also x-rayed Pitts leg, and a doctor told him he could go back to work on Friday, 10.17.14.

27. However, medical personnel found he had high blood pressure and told him he should not go back to work the rest of the week of the 13-17, Monday through Friday respectively, and this information was provided to his supervisors.

28. On about the 20th of October, Pitts started to call to go back to work, but was told by agents of Defendant(s) that until his blood pressure goes down, he can't come back to work.

29. Pitts stayed out, and went to the Doctor and started taking medication.

30. On 10.27.14 First Choice Primary Care in Macon FAX'd a letter to the supervisors indicating that Pitts could work, that he had visits to office on 10.20 and 10.27 and that his blood pressure was 140/90, which is not so high that he should stop being a fork lift driver; nor does it show that he would be a danger driving a forklift.

31. On 10.27.14 Pitts called Mr. Horst of First Class Staffing about coming back to work, and Horst said he would check with a supervisor.

32. At this point First Choice and/or Jacobson Company regarded Pitts as or perceived Pitts as having a disabling impairment that was not transitory and not minor, as to a major life's activity of work.

33. By implication, the supervisor(s) with whom Horst would check was with First Class or he could have been with Jacobson, or both.

34. On October 27, 2014, at around 6:35 p.m., Horst called Pitts back, and said that Pitts' position had been filled.

4

35. The position had not been filled, and even if it had been, the employer(s) did not engage in the interactive communication process required under the ADA.

36. The claim that the position had been filled, that precluded Pitts from returning to work, was pretext or false, and was in violation of the law prohibiting disability discrimination because the true reason Pitts was not allowed to come back was his high blood pressure.

37. Defendant(s) took action to preclude engagement in the interactive communication process to discuss any possible accommodation.

38. Mr. Horst said that Pitts should go file for unemployment, and that Jacobson would not fight it, indicating that Defendant employer took the position that Plaintiff Pitts was able to work with or without a reasonable accommodation.

39. Horst said they would see about getting Pitts back to work later, but they never did.

40. This was a pretextual accommodation used to cover the termination, and reflects treatment of Pitts as if he had a disability that prevented him from working.

41. Pitts asked how they could put him out of work when he was under a Doctor's care.

42. Pitts asked Horst about Workers Compensation, but Horst said he knew nothing about Workers Compensation, even though there may have been a connection between the workers compensation injury and Pitts overall condition.

43. As a result of Defendant(s) unlawful action, Plaintiff suffered and will with reasonable certainty continue to suffer mental anguish as a result of unlawfully being terminated.

44. As a result of anxiety caused by Defendant(s) Plaintiff's hypertension worsened, causing physical dissipation and more anguish, and increased hypertension, causing him to be unable to work.

45. Should Plaintiff's condition improve he seeks reinstatement and reasonable accommodations.

46. Defendant(s) actions were in willful, wanton and reckless disregard of the rights protected under the ADA under the totality of the circumstances, including the knowledge that Plaintiff was in a weakened and vulnerable position when trying to obtain other employment, due to the high blood pressure, of which they were aware, and that knowledge of the high blood pressure was obtained through a drug test implemented to avoid a workers compensation claim.

## CLAIM I

47. Plaintiff incorporates each and every paragraph above as if fully stated herein.

48. Defendant(s) regarded Plaintiff as disabled.

49. Defendant(s) mistakenly believed that Plaintiff had an impairment that substantially limited one or more major life activities, including the operation of a major bodily function, including the circulatory system. See 42 U.S.C. § 12102(2)(B).

50. In the alternative Defendant(s) mistakenly believed that an actual non-limiting impairment substantially limited one or more major life activities of Plaintiff.

51. Defendant(s) prohibited him from working on grounds prohibited by the ADA.

52. Plaintiff was terminated based on an impairment that was not transitory and not minor.

## CLAIM II

53. Plaintiff incorporates each and every paragraph above as if fully stated herein.

54. Plaintiff had a disability that affected a major life activity of work.

55. Plaintiff's high blood pressure was permanent and seriously impacted his ability to work, and one or more major life activities.

56. Defendant(s) were aware of the permanence and severity of Plaintiff's disability of high blood pressure.

57. Plaintiff could have continued to be a forklift driver and perform all of the functions thereof with a reasonable accommodation, during the period October 2014-October 2015.

58. Defendant(s) failed to reasonable accommodate Plaintiff and instead terminated him on pretextual grounds.

## CLAIM III

59. Plaintiff incorporates each and every paragraph above as if fully stated herein.

60. Defendant(s) either regarded Plaintiff as disabled or believed that in fact he was disabled but they refused to engage in the interactive communication process, so that they would not have try to offer and work with possible reasonable accommodations, and instead terminated him in contravention of the ADA.

WHEREFORE, Plaintiff prays that this Court:

A) Afford Plaintiff a trial by jury on all issues so triable;

B) Award Plaintiff damages to compensate him for all injuries proximately resulting from the Defendant's actions, in an amount to be determined by the enlightened conscious of the jury;

C) Award Plaintiff punitive damages due to the intentional and deliberately indifferent nature of Defendant's conduct;

D) Deem Plaintiff a prevailing party and award him attorneys' fees and expenses of litigation;

E) Award Plaintiff pre-judgment and post-judgment interest;

7

F) Award Plaintiff such other equitable or monetary relief as the Court deems just and proper, including but not limited to reinstatement, the removal of any misleading, discriminatory, or retaliatory job performance information.

Respectfully submitted this 28th day of January, 2016.

                               /s/ John P. Batson
                               John P. Batson
                               Georgia Bar No. 042150
                               Attorney for Plaintiff Pitts

Prepared by:

John P. Batson
P.O. Box 3248
Augusta, GA 30914-3248

Phone 706-737-4040
FAX 706-736-3391
jpbatson@aol.com


Physical address:
1104 Milledge Road
Augusta, GA 30904